UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DAVID HAMILTON,                                                    :
                                                                   :          MEMORANDUM & ORDER
                                          Petitioner,              :
                                                                   :          10-CV-5326 (ENV)
                       -against-                                   :
                                                                   :
                                                                   :
TERRELL WARDEN,                                                    :
                                                                   :
                                          Respondent.              :
------------------------------------------------------------------x
VITALIANO, D.J.

On September 10, 2010, David Hamilton, proceeding pro se, petitioned the

Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging the

imposition of prison disciplinary sanctions. For the reasons set forth below,

Hamilton's writ is denied and his petition is dismissed.

## Background

Petitioner was convicted of three counts of conspiracy to distribute and

distribution of cocaine base, in violation of 18 U.S.C. § 841(b)(1)(B), by the United

States District Court for the Southern District of New York. See United States v.

Hamilton, No. 06-CR-544, Docket No. 31. On July 25, 2007, he was sentenced to 66

months imprisonment to be followed by a four-year term of supervised release. Id.

After serving the majority of his sentence in a secure Bureau of Prisons

("BOP") facility, on March 16, 2010, Hamilton was transferred to the Bronx

Community Re-Entry Center ("BXCRC"), located, as its name suggests, in the

Bronx, to serve the remainder of his sentence. (Resp. Mem. 3.) In April 2010,

petitioner was released from BXCRC and placed on home confinement to serve the remainder of his custodial sentence. (Id.; Pet. 1 ¶ 3.) On June 30, 2010, Hamilton was arrested by the New York City Police Department ("NYPD"), and released the next day. (Pet. 1 ¶ 3.) The day of his release, July 1, 2010, BOP placed Hamilton on technical escape status. (Resp. Mem. 3.) A week later, on July 8, 2010, petitioner returned to BXCRC, and was removed from escape status. He was then placed in the facility's in-house population. (Id.) Approximately two hours later, Hamilton left the facility without authorization, and was again placed on escape status. (Id.) Petitioner contends that a BXCRC administrator informed him that U.S. Marshals would not be able to retrieve him from BXCRC until July 15, 2010, and, since he did not want to stay at BXCRC for that long, he decided to leave the facility and attempt to turn himself in directly to U.S. Marshals. (Pet. 1 ¶ 5.) On July 9, 2010, petitioner, indeed, surrendered to U.S. Marshals and was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn. (Pet. 1 ¶ 6; Resp. Mem. 3.)

On July 13, 2010, Hamilton received notice of his two disciplinary violations via two incident reports. (Pet. 1 ¶ 7; Resp. Mem. 3.) He acknowledged receipt of the reports in writing, and noted that he did not wish to have a staff member represent him at the hearings the violations had triggered. (Resp. Mem. 3.) On July 19, 2010,[1] the BXCRC Disciplinary Committee ("BDC"), as required, held two

---

[1] According to respondent, the hearings were not held sooner due to a shortage of staff at BXCRC. (Id.)

hearings. (Id.) BDC, after making findings, recommended that petitioner receive a disciplinary transfer to a more secure facility. (Id. at 4; Pet. 2.)[2]

On July 20, 2010, the Discipline Hearing Officer ("DHO") reviewed BDC's determinations, certified the BDC hearings, and, pursuant to 28 C.F.R. § 541(B), imposed additional disciplinary sanctions.[3] (Resp. Mem. 4.) By memorandum dated July 22, 2010, the New York Community Corrections Office issued petitioner a copy of the DHO-certified report. (Id.) Petitioner states that "he received sanction for both incident[s]" on July 26, 2010.[4] (Pet. 2.)

On August 9, 2010, petitioner filed a BP-10 (a regional administrative remedy), challenging the disciplinary process he had received in connection with the July 8, 2010 incident. (Resp. Mem. 4–5.) On September 8, 2010, the BP-10 was denied and closed. (Id. at 5.) On August 11, 2010, Hamilton filed a BP-10 challenging the disciplinary process he had received in connection with the June 30, 2010 incident. (Id.) On September 20, 2010, the BP-10 was denied and closed. (Id.)

---

[2] Petitioner agrees that there was a hearing in which "return to a more secure facility was advised," but states that the hearing took place on July 13, 2010, not July 19. (Pet. 2.) The discrepancy between the date noted by petitioner and the date noted in Respondent's Memorandum of Law is not significant to the Court's adjudication of Hamilton's claims, nor is it at all material.

[3] In addition to finding that the sanction recommended by the BDC—transfer to a more secure facility—was proportionate to the offense committed, the DHO imposed the following additional disciplinary sanctions: (1) with regard to the June 30, 2010 incident, disallowance of 22 days of good conduct time and forfeiture of 60 days of non-vested good conduct time; and (2) with regard to the July 8, 2010 incident, disallowance of 11 days of good conduct time and forfeiture of 60 days of non-vested good conduct time. (Resp. Mem. 4.)

[4] The Court assumes petitioner is referring to the date on which he received the July 22-issued memorandum.

On September 29, 2010, petitioner filed BP-11s (an additional regional administrative remedy) appealing the denials of the BP-10s. (Id.) Both BP-11s were denied in February, 2011. (Id.)

Hamilton filed the instant petition in the Southern District of New York on September 10, 2010. See David Hamilton v. Terrell Warden, No. 10-CV-6753, Docket No. 1. In that petition, Hamilton alleged that his due process rights were violated because he did not receive the incident reports within 24 hours and because he was sanctioned without an in-person DHO hearing, citing 28 C.F.R. §§ 541.15(a) and 541.17(D). (Pet. 2.) The Southern District transferred Hamilton's habeas proceeding to this district because, at the time of its filing, petitioner was incarcerated at MDC. See 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Hamilton was released from prison on August 15, 2011 and is currently on supervised release.[5]

## Standard of Review

Pursuant to 28 U.S.C. § 2241, federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States," may seek habeas corpus review of their custody. 28 U.S.C. § 2241(c)(3). Relief under § 2241 is available to a federal prisoner who challenges the manner in which a sentence is

---

[5] See Resp. Mem. 7; BOP, Inmate Locator, http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false &IDType=IRN&IDNumber=70099-054&x=95&y=9 (last visited Nov. 7, 2013).

implemented, as opposed to challenging the underlying legality of the conviction committing him to custody.  Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (citing Chambers v. United States, 106 F.3d 472, 474–75 (2d Cir. 1997)).  A § 2241 petition is thus limited to challenges "to the execution of a sentence . . . [which] includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'"  Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) (emphasis in original) (quoting Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)).

## Discussion

A. Failure to Exhaust Administrative Remedies

Respondent argues that Hamilton's petition is procedurally barred.  A federal prisoner seeking relief from adverse custodial conditions under § 2241 must first exhaust the remedies available through BOP's Administrative Remedies Program.  Carmona, 243 F.3d 629, 630 (2d Cir. 2001); see also Bogarty v. Warden of MDC, Brooklyn, No. 09-CV-3711, 2009 WL 4800089, at *1 (E.D.N.Y. Dec. 11, 2009); Stergios v. United States, No. 09-CV-5108, 2010 WL 169484, at *2 (E.D.N.Y. Jan. 15, 2010).  Inmate disciplinary procedures are outlined in 28 C.F.R. § 541. BOP's administrative remedy procedure for federal inmates seeking to exhaust administrative remedies to challenge such discipline is outlined in 28 C.F.R. § 542. Disciplinary sanctions can be challenged initially through the filing of a BP-10 form. 28 C.F.R. § 542.14(d)(2).  If the Regional Director denies the appeal, that decision, if

the prisoner is still aggrieved, must be appealed through a BP-11 appeal to the General Counsel's Office within 30 days of the Regional Director's decision. 28 C.F.R. § 542.15(a). Only upon completion of all the required steps in the process can a federal inmate fully exhaust available administrative remedies. Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009); Strong v. Lapin, No. 90-CV-3522, 2010 WL 276206, at *4 (E.D.N.Y. 2010) ("Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

The record reflects that Hamilton filed both BP-10s and BP-11s. However, he did not file the BP-11s, or obtain final determinations from BOP's Central Office, until after commencing the instant action. The Court is aware of but a single case in this circuit that directly addresses circumstances analogous to the timing reflected in Hamilton's application. See Barber v. Perdue, No. 11-CV-0127, 2012 WL 5996342 (N.D.N.Y. Nov. 9, 2012), report and recommendation adopted, 2012 WL 5996866 (N.D.N.Y. Nov. 30, 2012). That decision found the petition barred for failure to exhaust, absent a showing of cause for the premature federal court filing and resulting prejudice. Id. at *5–6. Petitioner makes no such showing here.

Notwithstanding, given petitioner's pro se status and the concomitant need for pleading solicitude, other procedural options might be crafted—perhaps dismissal with leave to renew, or, where, as here, the petitioner did timely exhaust his administrative appeals, the original filing might be deemed refiled nunc pro tunc. In any event, there is no need to engage in a prolix analysis which, for purposes of this case, would be as useful as attempting to count the number of

angels that can dance on the head of a pin. The issue is of no moment, substantively, because Hamilton's claims are totally without merit.[6]

## B. Due Process

Assuming exhaustion of his administrative remedies, Hamilton's claim fails on the merits. As a starting point, the Court notes that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and thus the full panoply of rights due a defendant in such proceedings does not apply." Maydak v. Warden, FCI Raybrook, 1 F. App'x 55, 56 (2d Cir. 2001) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). As a consequence, a prison disciplinary hearing typically will satisfy the requirements of due process under the Fifth or Fourteenth Amendment if:

> (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses (as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals); (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision.

Perez v. Terrell, No. 08-CV-1373, 2011 WL 198437, at *2 (E.D.N.Y. Jan. 20, 2011) (internal citations omitted); see also 28 C.F.R. § 541.17 (explicating procedures before the DHO). Moreover, "inmates have a liberty interest in good time credit they have already earned." Stergios, 2010 WL 169484, at *2 (quoting Abed v.

---

[6] The judicially-crafted administrative exhaustion requirement for § 2241 habeas petitions is not jurisdictional. United States v. Basciano, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005); see also Carmona, 243 F.3d at 634.

Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000)). Therefore, "due process requires that 'the findings of the prison disciplinary board [b]e supported by some evidence in the record.'" Williams v. Menifee, 331 F. App'x 59, 60–61 (2d Cir. 2009) (quoting Superintendent, Massachusetts Correctional Institution at Walpole v. Hill, 472 U.S. 445, 454 (1985)).

Applying these standards, first, the five indicia of due process identified in Perez were present in Hamilton's case: he received advance notice of the charges against him on July 13, 2010, six days before his in-person hearing; the hearings were conducted by a neutral arbiter; Hamilton waived his rights to present evidence or to call witnesses, and made a statement admitting the charges against him; he also waived his right to have a staff member represent him; and, after the BDC hearing body noted its findings, the specific evidence it relied on, and its recommendation, the hearing file was reviewed by DHO, which certified the outcomes and imposed additional sanctions in a written decision that was provided to petitioner. It is more than clear that these actions, taken together, satisfied all due process requirements. Wolff, 418 U.S. at 563–67.

More specifically, with regard to petitioner's first complaint, there is no requirement that an inmate must be served with a copy of the incident report within 24 hours. In fact, the applicable regulations provide only that prison staff should "ordinarily" issue a written copy of the charge against an inmate "within 24 hours of the time staff becomes aware of the inmate's involvement in the incident." (Pet. Mem. 10, citing 28 C.F.R. § 541.15(a).) Moreover, in this case, Hamilton could not

be served with the first incident report within 24 hours because he had absconded. Similarly, the second report was not served on him within 24 hours because, again, he was not present at BXCRC. Although petitioner was taken into custody on June 9, 2010, he was taken to MDC, not BXCRC. Since July 10–11, 2010 was a weekend, Hamilton was served with copies of the incident reports only two business days after he returned to BOP custody. (Pet. Mem. 10.) Under these circumstances, any lapse in time in serving petitioner with the incident reports was reasonable. In any event, the delay certainly did not rise to the level of a due process violation.

Next, regarding petitioner's second complaint, although inmates facing serious disciplinary charges in a secure BOP facility are provided a second opportunity for a hearing before a DHO, see 28 C.F.R. § 541.15(h)–(I), halfway house residents are not. Rather, a DHO reviews the written recommendations of the hearing body at the half-way house (in this case, BDC) and imposes appropriate sanctions.[7] BOP complied with precisely those requirements in Hamilton's case. In doing so, there was no due process right abridgement since there is no right to a second in-person hearing, or to an in-person hearing before a specific BOP administrative officer or body (for example, a DHO, rather than BDC).

In sum, there are no § 2241 grounds for disturbing Hamilton's conditions of custody. Consequently, his petition must be dismissed.

---

[7] See BOP Program Statement No. 7300.09, Community Corrections Manual, at 19–20, available at http://www.bop.gov/DataSource/execute/dsPolicyLoc (last visited November 7, 2013).

## Conclusion

For the foregoing reasons, Hamilton's petition for a writ of habeas corpus is dismissed and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

s/ENV

Dated: Brooklyn, New York
      December 6, 2013

ERIC N. VITALIANO
United States District Judge